UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSADELA DURRUTHY, an Individual,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, LLC, a Delaware Limited Liability Corporation; and<br>DOES 1-10, Inclusive,<br><br>　　　　　　Defendants. | Case No.:  20–CV–1374–W–MSB<br><br>**ORDER:**<br><br>**(1) DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION [DOC. 4]** |

Pending before the Court is Defendant's Motion to Compel Arbitration for the above-entitled action.  (*Def.s' Mot. to Compel* [Doc. 4].)  The Court decides the matters on the papers submitted and without oral argument.  <u>See</u> Civ. L.R. 7.1(d)(1).  For the reasons stated below, the Court **DENIES** Defendant's Motion to Compel Arbitration [Doc. 4].

# I.   BACKGROUND

Defendant hired Plaintiff as a Customer Service Representative on May 2, 2014. (*Pl.'s Compl.* ¶ 15 [Doc. 1].)  Plaintiff suffers from a disability and took several medical leaves of absence during her employment with Defendant, including a three-month period in 2015, several days in July of 2017, and the months from September 2017 to December 2018, when, according to Plaintiff, her employment was unlawfully terminated by Defendant.  (*Id.* at ¶¶ 16–23.)  Plaintiff alleges that Defendant "unlawfully failed to engage in the interactive process with [Plaintiff], failed to accommodate her Disability, interfered with her leave rights, and unlawfully terminated her employment in violation of the antidiscrimination and protected leave laws."  (*Id.* at ¶ 24.)  According to Plaintiff, her first and only notification of termination from Defendant was an exit survey she received in the mail December 2018.  (*Id.* at ¶ 23.)

On June 3, 2019, Plaintiff reapplied for employment with Defendant.  (*Def.'s Mot. to Compel* 11:7–9 [Doc. 4].)  Plaintiff completed an employment application that included a mandatory Mutual Arbitration Agreement ("Agreement").  (*Pl.'s Opp'n* 2:10–13 [Doc. 5].)  Applicants are required to agree to be bound to the Agreement as a condition of Defendant considering their application for employment. (*Def.'s Ex. A* [Doc. 4–1].)  Per the Agreement, any applicant, current, or former employee must agree to submit to arbitration "all disputes, claims, and controversies . . . related to pre-employment, employment, [or] employment termination" including "all disputes related to the arbitrability of any claim or controversy."  (*Def.'s Ex. B* [Doc. 4–1].)  The Agreement instructs that it will be governed by the Federal Arbitration Act ("FAA"). (*Id.*)  The Agreement also lists several claims excluded from arbitration and includes a severability clause which stipulates that if any "court of competent jurisdiction" finds a part of the Agreement "illegal, invalid, or unenforceable" "the remainder of [the] Agreement shall not be affected by such determination . . . ."  (*Id.*)  According to the Agreement, "[a]rbitration hearings will be conducted pursuant to the Solution Channel Program Guidelines" before an "arbitrator who is a current member of the American

2

Arbitration Association (AAA) and is listed on the Employment Dispute Resolution Roster." (*Id.*)

On July 20, 2020, Plaintiff filed a Complaint against Defendant alleging several federal and state employment-related claims stemming from her December 2018 termination and the preceding events. (*Pl.'s Compl.* ¶¶ 24–25 [Doc. 1].)  On August 12, 2020, Defendant filed this Motion to Compel Arbitration for Plaintiff's claims, seeking to uphold the Agreement from Plaintiff's June 3, 2019 application. (*Def.'s Mot. to Compel* 11:3–12 [Doc. 4].)

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

"A party seeking to compel arbitration has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." Ashbey v. Archstone Prop. Mgmt., Inc., 785 F.3d 1320, 1323 (9th Cir. 2015).  "The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344 (2011) (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989)).  "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983).

When ruling on a motion to compel arbitration, a court applies a standard similar to that found in Federal Rule of Civil Procedure 56.  See Concat LP v. Unilever, PLC, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004).  "'Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect.  If there is doubt as to whether such an agreement exists, the matter, upon a proper and timely demand, should be submitted to a jury.'"  Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1141 (9th Cir. 1991) (quoting Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 (3d Cir. 1980)).

## III.   DISCUSSION

### A.   This Court Determines Arbitrability

Plaintiff and Defendant are in disagreement over which authority decides the arbitrability of Plaintiff's claims.  Defendant, insisting that the arbitrator decides, points to delegation language in the Agreement itself.  (Def.'s Mot. to Compel 28:14–19 [Doc. 4].)  Section I-1 of the Agreement, directs that "the arbitrator shall have the sole authority to determine whether a particular claim or controversy is arbitrable."  (Def.'s Ex. B [Doc. 4-1].)  Section B-3 of the Agreement includes "all disputes related to the arbitrability of any claim or controversy" as a "covered claim."  (Id.)  Plaintiff argues this Court, not an arbitrator, decides the arbitrability of her claim.  (Pl.'s Opp'n 3:7 [Doc. 5].)  Plaintiff claims that courts decide the arbitrability of cases where one party denies the existence or enforceability of a contract.  (Id. at 4:22–5:6) (first citing Kum Tat Ltd. v. Linden Ox Pasture, LLC, 845 F.3d 979, 983 (9th Cir. 2017); then citing Rosenthal v. Great W. Fin. Sec. Corp., 926 P.2d 1061, 1072–74 (Cal. 1996)).  Plaintiff also claims that the contract lacks "clear and unmistakable evidence that parties intended the arbitrator to decide arbitrability," and must therefore be decided by this Court rather than an arbitrator.  (Pl.'s Opp'n at 3:15–4:4 [Doc. 5].) (first citing Dennison v. Rosland Capital, LLC, 47 Cal. App.

4

5th 204, 209 (Cal. Ct. App. 2020); then citing Baker v. Osborne Dev. Corp., 159 Cal. App. 4th 884, 893-94 (Cal. Ct. App. 2008)).

Unlike controversies over the scope of arbitrable issues, gateway issues of arbitrability are presumptively reserved for courts. Momot v. Mastro, 652 F.3d 982, 986 (9th Cir. 2011). "Accordingly, the question of arbitrability is left to the court unless the parties clearly and unmistakably provide otherwise." Id. at 988. However, the Supreme Court has rejected Plaintiff's argument that courts, not arbitrators, decide arbitrability where one party denies the existence or enforceability of a contract. See Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 70 (2010) ("Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."). The Court held that "unless [plaintiff] challenge[s] the delegation provision specifically, we must treat it as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." Id. at 72

Plaintiff directly addresses the gateway arbitration issue by arguing that the Agreement lacks "clear and unmistakable evidence that parties intended the arbitrator to decide arbitrability." (Pl.'s Opp'n at 3:15–16 [Doc. 5].) The Supreme Court recently rearticulated the "clear and unmistakable" standard for questions of gateway arbitration in Henry Schein, Inc. v. Archer & White, Inc. 139 S. Ct. 524, 531 (2019) ("Under our cases, courts 'should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'") (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). Plaintiff argues that this Agreement's delegation of this issue to the arbitrator is ambiguous and unenforceable because the Agreement "expressly grants the arbitrator and a court power to determine enforceability." (Pl.'s Opp'n 3:19–20 [Doc. 5]) (emphasis in original). The alleged conflict is between the delegation language already identified and the severability clause, which stipulates that any part of the contract found to be unenforceable by a court is severable from the rest of the Agreement. (Pl.'s Opp'n [Doc. 5].) California precedent

declares "[w]here . . . a contract includes a severability clause stating a court of competent jurisdiction may excise an unconscionable provision, there is no clear and unmistakable delegation to the arbitrator to decide if the arbitration agreement is unconscionable." Dennison, 47 Cal. App. 5th at 209–10. Defendant's reliance on Mohamed v. Uber Technologies, claiming that the apparent conflict is artificial, (*Def.'s Reply* 3:8–9 [Doc. 6],) is distinguishable from this controversy, see 848 F.3d 1201, 1209 (9th Cir. 2016). In Mohamed, the allegedly conflicting clause contained a stipulation, "which eliminated the inconsistency." 848 F.3d at 1209. No such stipulation exists in this Agreement.

This Agreement lacks the "clear and unmistakable evidence" required to override the presumption of judicial review of gateway arbitrability. See Dennison, 47 Cal. App. 5th at 209–10. This Court must therefore decide the arbitrability of the Agreement.

### B.   **The Arbitration Agreement is Valid**

Plaintiff contends that the arbitration agreement is invalid because the parties did not come to a "meeting of the minds" on "two essential and indispensable terms of the Agreement": (1) the Agreement's governing rules and (2) the Agreement's application to Plaintiff's prior employment period with Defendant. (*Pl.'s Opp'n* 5:18–23 [Doc. 5].)

Plaintiff claims that she "never understood the AAA rules to apply to the agreement," that Defendant did not inform as such, and that this condition was absent from the Agreement and attached documents. (*Id.* at 6:3–14.) According to Plaintiff, governing rules are "dispositive of the contract's validity" and lack of agreement over this term is "material to the formation of the contract." (*Id.* at 6:11–14.) Defendant disagrees, asserting that the governing rules were properly in the Agreement, and even if not, uncertainty regarding governing rules does not establish lack of mutual consent to arbitrate. (*Def's Reply* 4:9–24 [Doc. 6].)

Plaintiff also alleges that the Agreement's wording "does not unequivocally require arbitration that arose from [her] 'prior' employment" and that "the text and

context of the Agreement support [her] understanding [that it does not apply to her prior employment]." (*Pl.'s Opp'n* 8:12–18 [Doc. 5].)  Further, Plaintiff asserts that Defendant cannot have intended the Agreement to apply to the prior employment period "because Defendant may not have reasonably foreseen that former employees with potential legal claims would reapply for employment and thereby purportedly waive their rights to sue on pre-existing claims." (*Id.* at 8:18–9:3.)  Defendant replies that Plaintiff's "alleged 'intention' is directly contrary to the express language of the Agreement" which covers her prior employment period.  (*Def.'s Reply* 3:23–26 [Doc. 6].)

"In California, '[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate.'" Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC, 282 P.3d 1217, 1224 (Cal. 2012) (quoting Craig v. Brown & Root, Inc., 84 Cal. App. 4th 416, 420 (Cal. Ct. App. 2000)).  Therefore, consent is an essential element of any arbitration agreement, and "is to be ascertained solely from the contract that is reduced in writing, if possible." Martinez v. BaronHR, Inc., 51 Cal. App. 5th 962, 967 (Cal. Ct. App. 2020) (citing Cal. Civ. Code § 1639).  "The contract language controls if it is clear and explicit." Id. (citing Cal. Civ. Code § 1638).  Courts apply an objective standard and look to the reasonable meaning of an agreement to determine if parties manifest mutual assent. Id.  "The law is well-settled that unexpressed subjective intentions are irrelevant to the issue of mutuality." Id. at 970.

There are four parts of the Agreement relevant to Plaintiff's arguments. The Agreement is prefaced with the following "Notice" provision in all capital letters:

> PLEASE READ THE FOLLOWING MUTUAL ARBITRATION AGREEMENT ("AGREEMENT") CAREFULLY.  IF YOU ACCEPT THE TERMS OF THE AGREEMENT (WHETHER YOU ARE AN APPLICANT, CURRENT EMPLOYEE, OR FORMER EMPLOYEE), YOU ARE AGREEING TO SUBMIT ANY COVERED EMPLOYMENT-RELATED DISPUTE BETWEEN YOU AND CHARTER COMMUNICATIONS (CHARTER) TO BINDING ARBITRATION.  YOU ARE ALSO AGREEING TO WAIVE ANY RIGHT TO LITIGATE THE DISPUTE IN A COURT AND/OR HAVE THE DISPUTE DECIDED

BY A JURY.

(*Def.'s Ex. B* [Doc. 4-1].)

Section A of the Agreement, the "Arbitration Requirement" Clause reads:

You and Charter mutually agree that, as a condition of Charter considering your application for employment and/or your employment with Charter, any dispute arising out of or relating to your preemployment application and/or employment with Charter or the termination of that relationship, except as specifically excluded below, must be resolved through binding arbitration by a private and neutral arbitrator, to be jointly chosen by you and Charter.

(*Id.*)

Section H of the Agreement, "Selection of the Arbitrator," reads:

The arbitration shall be held before one arbitrator who is a current member of the American Arbitration Association (AAA) and is listed on the Employment Dispute Resolution Roster.  Within 45 days after submission of the claim, Charter will request from the AAA a list of at least five arbitrators willing to hear and decide the dispute.  Within 20 days after receipt of the list from the AAA, the parties will select an arbitrator to hear and resolve the dispute and will notify the AAA of the selection of an arbitrator.

(*Id.*)

Section I-1 of the Agreement reads: "[a]rbitration hearings will be conducted pursuant to the Solution Channel Program Guidelines and the arbitrator shall have the sole authority to determine whether a particular claim or controversy is arbitrable."  (*Id.*)

The Agreement's written language clearly and explicitly manifests consent to arbitrate "any dispute arising out of or relating to [plaintiff's] . . . employment with Charter or the termination of that relationship" "as a condition of Charter considering [Plaintiff's] application for employment."  (*Id.*)  Plaintiff does not deny that she electronically signed the Agreement and "is, therefore, deemed to have assented to all its terms."  See Martinez, 51 Cal. App. 5th at 967.  The Agreement instructs that arbitration will be held before a "current member of the American Arbitration Association (AAA)" and that any hearings would "be conducted pursuant to the Solution Channel Program

Guidelines." (*Def.'s Ex. B* [Doc. 4-1].)  These are the express terms to which both parties consented and must be held.  See Martinez, 51 Cal. App. 5th at 967.  Allegations that a party is retroactively attempting to enforce unincorporated terms do not invalidate either party's consent to a valid written agreement.  See id. at 966 ("The parties' mutual content is to be ascertained *solely from the contract that is reduced to writing*. . . .") (emphasis added).

The Agreement covers "any dispute arising out of or relating to [an applicant's] preemployment application and/or employment with Charter or the termination of that relationship. . . ." (*Def.'s Ex. B* [Doc. 4-1].)  The Agreement does not limit its application to future employment, nor does it exclude claims from prior employment periods.  (*Id.*)  Therefore, an objective reading supports that "employment" reasonably means any employment period between the two parties of the Agreement.  Contrary to Plaintiff's argument that Defendant cannot have intended a retroactive application of the Agreement, Defendant expressly notified applicants that the Agreement would apply to a former employee.  (*Id.*)  Plaintiff's alleged lack of consent to arbitrate claims from her prior employment period with Defendant are absent from the Agreement, and "unexpressed subjective intentions are irrelevant to the issue of mutuality."  Martinez, 51 Cal. App. 5th at 970.  The Agreement to arbitrate between Plaintiff and Defendant does not lack mutuality of assent.

### C.   **Plaintiff's Claims Are Within the Scope of the Agreement**

According to Plaintiff, this Agreement, even if valid and enforceable, does not apply to claims arising out of her prior employment period with Defendant.  (*Pl.'s Opp'n* 21:11–14 [Doc. 5].)  Plaintiff argues that Section A of the Agreement only includes disputes "arising from 'pre-employment application' and those arising from subsequent 'employment or termination'" and therefore are not subject to Section B's "covered ***claims*** that are subject to arbitration if, and only if, they arise from a ***dispute*** that falls within the scope of the agreement." (*Id.* at 22:6–11.)  Further, Plaintiff argues that the

Agreement's text demonstrates a future-looking application, specifically by using the terms "considering your application," "arising out of," and "may be some employment-based disputes." (*Id.* at 21:17–20, 23:18–20.) Plaintiff alleges the forward-looking text and context represent the intent of the parties and, therefore, a dispute from a previous employment period is not subject to the Agreement. (*See, e.g.*, *id.* at 23:23–24:2.)

Defendant believes that the Agreement's inclusion of "any dispute" settles the matter and necessarily includes claims from Plaintiff's prior employment period. (*Def.'s Reply* 10:3–7 [Doc. 6].) Defendant denies that there is any conflict between Section A and the broad coverage of claims covered by Section B and that both sections lack the term "subsequent" when referring to the employment periods covered. (*Id.* at 10:8–11, 11:3–5.)

In California, arbitration agreements can be written to include retroactive application. See, e.g., Salgado v. Carrows Rests., Inc., 33 Cal. App. 5th 356, 360–62 (Cal. Ct. App. 2019); In re Verisign, Inc. v. Derivative Litigation, 531, F.Supp.2d 1173, 1224 (N.D. Cal. 2007); Jones v. Déjà vu, Inc., 419 F.Supp.2d 1146, 1150 (N.D. Cal. 2005). In Salgado, the California Court of Appeals found that an arbitration agreement, signed on December 7, 2016, could be applied retroactively to a claim that was brought on November 22, 2016. 33 Cal. App. 5th at 358–59. The Court rejected the notion that the agreement's inclusion of claims that "*may arise* out of" excluded any claims existing pre-agreement because the agreement immediately thereafter stipulated "*or be related in any way to* [the employee's] application for employment and/or employment." Id. at 360. The Court also relied on the agreement's explicit inclusion of "*any claim*, dispute, and/or controversy." Id. at 361. The Court noted that the "contention that an agreement to arbitrate a dispute must pre-date the actions giving rise to the dispute is misplaced. Such a suggestion runs contrary to the contract principles which govern arbitration agreements." Id. (quoting Zink v. Merrill Lynch Pierce Fenner & Smith, Inc., 13 F.3d 330, 332 (10th Cir. 1992)).

The text of this Agreement fits squarely within the reasoning of Salgado in favor of Defendant's interpretation.  See id. at 360–62.  As in Salgado, section A of this Agreement includes the important "or" that marks an alternative to the "arising out of" language and separately includes any dispute "relating to [Plaintiff's] pre-employment application and/or employment with Charter or the termination of that relationship . . . ." (*See Def.'s Ex. B* [Doc. 4-1].)  Section B also clearly and explicitly covers "all disputes, claims, and controversies . . . related to pre-employment, employment, employment termination or post-employment-related claims . . . ."  (*Id.*)  The Agreement's use of "arising out of," "considering," and "may" is not in conflict with and does not negate the Agreement's clear inclusion of all disputes related to Plaintiff's employment with Defendant.  See Salgado, 33 Cal. App. 5th at 360.

Plaintiff can claim that she never intended to bind her prior employment period to an arbitration agreement.  But "[t]he parties' mutual content is to be ascertained *solely from the contract that is reduced to writing*. . . ." See Martinez, 51 Cal. App. 5th at 966 (emphasis added).  Here, the words of the Agreement support Plaintiff's broad interpretation and include any dispute related to Plaintiff's employment with employer.

Of course, this case distinguishes from Salgado in that Plaintiff's dispute originates from a previous employment period that was terminated before this Agreement was signed in a later attempt by Plaintiff to regain employment.  See 33 Cal. App. 5th at 358; (*Pl.'s Opp'n* 1:17–2:17 [Doc. 5].)  But these compelling circumstances do not alter the application of precedent.  Plaintiff offered no authority that exempts her unique context, an application Agreement retroactively applying to a previous employment period, from the legal principles already discussed supporting the Agreement's inclusion of her claims. The Agreement, so long as it is valid, must be upheld according to its terms, which include "any dispute . . . relating to [Plaintiff's] pre-employment application and/or employment with [Defendant] or the termination of that relationship."  (*Def.'s Ex. B* [Doc. 4-1].)

### D.     Defendant Has Not Failed to Satisfy a Condition Precedent

Plaintiff argues that Defendant has failed to satisfy a condition precedent and has forfeited the right to pursue arbitration under the Agreement.  (*Pl.'s Opp'n* 24:6–8 [Doc. 5].)  Plaintiff points to section F of the Agreement, which requires "[i]n the event that Charter intends to seek arbitration of a dispute under this Agreement, it must send by certified mail to the individual's last known address, a written claim that meets the requirements of this Section F."  (*Id.* at 24:18–21) (quoting *Def.'s Ex. B* [Doc. 4-1].)

Plaintiff alleges that Defendant failed to first send her a written claim by certified mail before filing this Motion to Compel Arbitration.  (*Id.* at 24:24.)  Plaintiff misquotes Section F in her Opposition, writing that Defendant "must *first* send by certified mail to the individual's last known address, a written claim that meets the requirements of this Section F."  (*Id.* at 24:19–21)(emphasis added).  Significantly, section F does not use the word "first" when describing Defendant's obligation to send a written claim by certified mail.  Even if section F is interpreted to apply to responsive motions to compel arbitration rather than or in addition to initial claims for arbitration, the absence of Plaintiff's misquoted "first" removes any temporal element necessary to create a condition precedent.  See Cal. Civ. Code § 1436 ("A condition precedent is one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed.").  The condition precedent that Plaintiff attempts to use against Defendant does not exist.

### E.     The Agreement Is Unconscionable

Under the FAA and California law, an arbitration agreement is an enforceable contract "in the absence of some other generally applicable contract defense . . . ."  Mohammed, 848 F.3d at 1210–11.  Plaintiff argues that this arbitration agreement is unconscionable and unenforceable, (*Pl.'s Opp'n* 10:1–3 [Doc. 5],) a legal standard for which California requires both a procedural and substantive element, Mohammed, 848 F.3d at 1210.  Procedural unconscionability focuses on oppression or surprise due to

1   unequal bargaining power, while substantive unconscionability looks for overly harsh or

2   one-sided results.  Mohammed, 848 F.3d at 1210.  Both elements are required, though not

3   in equal degree, and a "sliding scale" standard balances the two.  Armendariz v. Found.

4   Health Psychcare Services, Inc., 6 P.3d 669, 690 (Cal. 2000) ("In other words, the more

5   substantively oppressive the contract term, the less evidence of

6   procedural unconscionability is required to come to the conclusion that the term is

7   unenforceable, and vice versa.").

8        This Agreement is unconscionable and unenforceable because it is both

9   procedurally and substantively unconscionable under California law.  See id.

10   ## 1.    **Procedural Unconscionability**

11        Ninth Circuit precedent directs our analysis.  In Ingle v. Circuit City Stores. Inc.,

12   the Ninth Circuit determined a delegation clause was procedurally unconscionable where

13   an "[employee] had no meaningful opportunity to opt out of the arbitration agreement,

14   nor did she have any power to negotiate the terms of the agreement.  Therefore, because

15   [employer] presented the arbitration agreement to [employee] on an adhere-or-reject

16   basis, [the Ninth Circuit] conclude[d] that the agreement [was] procedurally

17   unconscionable."  328 F.3d 1165, 1172 (9th Cir. 2003).  In Mohammed, the Ninth Circuit

18   held that an arbitration agreement that included an "opt-out" provision was not

19   procedurally unconscionable.  848 F.3d at 1211.  No such "opt-out" opportunity exists

20   here.  (Pl.'s Opp'n 2:10–13 [Doc. 5].)  In a situation, like this, where the "weaker party is

21   presented the clause and told to 'take it or leave it' without the opportunity for

22   meaningful negotiation, oppression, and therefore procedural unconscionability, are

23   present."  See Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1282 (9th Cir. 2006)

24   (quoting Szetela v. Discover Bank, 97 Cal. App. 4th 1094, 1100 (Cal. Ct. App. 2002)).

25        Defendant's offering of Poublon v. C.H. Robinson Co. frames the

26   unconscionability analysis at large, but it does not change the procedural

27   unconscionability finding.  See 846 F.3d 1251, 1261 (9th Cir. 2017).  Poublon recognizes

28   that this type of procedural unconscionability is "low" on the sliding scale analysis and

requires a greater substantive element to render an agreement unenforceable.  846 F.3d at 1261 ("In the employment context, if an employee must sign a non-negotiable employment agreement as a condition of employment but there is no other indication of oppression or surprise, then the agreement will be enforceable unless the degree of substantive unconscionability is high.").  Relevant to the sliding scale analysis, Plaintiff also argues that the Agreement is even more procedurally unconscionable because Defendant neglected to bring to Plaintiff's attention that the AAA rules applied, to provide a copy of the rules, to identify which version of the AAA governed, and to inform Plaintiff where she could find the AAA rules.  (*Pl's Opp'n* 11:5–9 [Doc. 5].)  Further, Plaintiff argues that the Agreement was surprising and procedurally unconscionable because of the already discussed contradiction between the delegation and severability clauses of the Agreement.  (*Id.* at 11:14–21.)  The effect and merits of these last two arguments need not and will not be addressed in light of the substantive unconscionability analysis below.

This delegation clause is procedurally unconscionable under California law because it was offered by Defendant on a "take it or leave it" basis and lacked any "opportunity for meaningful negotiation."  See Nagrampa, 469 F.3d at 1282.

## 2.   **Substantive Unconscionability**

Plaintiff argues that the arbitration Agreement is substantively unconscionable for the following reasons: (1) it lacks mutuality; (2) it unfairly reduces the statute of limitations for Fair Employment and Housing Act ("FEHA") claims; (3) it violates FEHA administrative processes and remedies; (4) it "unlawfully" denies employees their statutory right to recover FEHA fees and costs; (5) it mandates arbitration of non-arbitrable Private Attorney General Act ("PAGA") claims; (6) it disallows adequate discovery; (7) it precludes employees from amending claims prior to engaging in discovery; (8) it unlawfully waives rights to a jury trial for non-arbitrable claims; (9) it gives Defendant an unfair "free peek" at Plaintiff's case; (10) it includes a one-sided

attorney's fee provision that favors Defendant for contesting arbitration. (*Pl.'s Opp'n* 12:7–17 [Doc. 5].)

### a.   <u>Lack of Mutuality</u>

Under California law, an arbitration agreement "lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." <u>Armendariz</u>, 6 P.3d at 694.  Further, an arbitration agreement is "unfairly one-sided and, therefore, substantively unconscionable" where it "compels arbitration of the claims employees are most likely to bring against [an employer] . . . [but] exempts from arbitration the claims [an employer] is most likely to bring against its employees." <u>Ferguson v. Countrywide Credit Indus.</u>, 298 F.3d 778, 785 (9th Cir. 2002) (quoting <u>Mercuro v. Superior Ct.</u>, 96 Cal. App. 4th 167, 176 (Cal. Ct. App. 2002).  Plaintiff argues that this arbitration Agreement lacks mutuality because it "self-servingly excludes from arbitration those claims that employers are most likely bring [sic] against employees." (*Pl.'s Opp'n* 13:11–12 [Doc. 5].)  Specifically, Plaintiff points to the Agreement's exclusion of "injunctive or other equitable relief related to unfair competition and the taking, use or unauthorized disclosure of trade secrets or confidential information" and "claims of theft, embezzlement, or any criminal conduct, as well as claims over intellectual property rights." (*Id.* at 13:12–16) (internal citations and quotations omitted.)

Defendant answers that the exceptions "from arbitration are mutual and apply to employers and employees alike." (*Def.'s Reply* 6:15–16 [Doc. 6].)  This rebuttal fails to address the Agreement's compliance with the mutuality standard from <u>Ferguson</u> and <u>Mercuro</u>.  <u>See</u> 298 F.3d at 785; 96 Cal. App. 4th at 176.  Even where each exclusion applies to both parties, an agreement lacks mutuality when it exempts the claims most likely brought by an employer, but not the claims most likely brought by an employee. <u>See Ferguson</u>, 298 F.3d at 785.  Defendant does not deny that this agreement arbitrates most "employee" claims while exempting most "employer" claims.  Instead, Defendant argues that the Agreement's exemption for injunctive relief for claims of unfair

competition, trade secrets, or confidential information should not render the Agreement substantively unconscionable because there are no such claims at issue in the present controversy.  (*Def.'s Reply* 6:15–18 [Doc. 6]) (citing Pope v. Sonatype, Inc., No. 5:15–cv–00956–RMW2015–RMW, 2015 WL 2174033, at *5 (N.D. Cal. May 8, 2015)).

Defendant's reliance on Pope, where one court dismissed the unilateral aspect of a trade secret exception because no such issue was in controversy, No. 5:15–cv–00956–RMW2015–RMW, 2015 WL 2174033, at *5 (N.D. Cal. May 8, 2015), does not overwhelm the usual precedent, see Ferguson, 298 F.3d at 785.  In Ferguson, plaintiff brought claims for sexual harassment, retaliation, and a hostile work environment.  298 F.3d at 780.  Still, the Ninth Circuit found that the arbitration agreements' exclusion of "claims for workers' compensation or unemployment compensation benefits, injunctive and/or other equitable relief for intellectual property violations, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information . . . was unfairly one-sided and, therefore, substantively unconscionable."  Id. at 784–85.  In effect, the Ninth Circuit has rejected Defendant's and Pope's reasoning that the unfair exclusions must address the claims in controversy to demonstrate lack of mutuality and substantive unconscionability.  See id.

This Agreement lacks mutuality because it requires arbitration for claims most likely brought by employees but excludes from arbitration claims most likely brought by the employer.  See id. at 785.  Because "mutuality is the paramount consideration when assessing substantive unconscionability," its absence weighs heavily on the sliding scale analysis.  See Pokorny v. Quixtar, Inc., 601 F.3d 987, 997 (9th Cir. 2010).

### b. <u>Statute of Limitations</u>

Plaintiff argues that the Agreement's statute of limitations "has shortened the statutory time to file [her] claims by up to two or more years."  (*Pl.'s Opp'n* 14:4–5 [Doc. 5].)  Section E of the Agreement requires that "any claim that must be filed with an administrative agency or body as a precondition or prerequisite to filing the claim in court, must be filed with Solution Channel within the time period by which the charge . . .

would have had to be filed with the agency or other administrative body." (*Def.'s Ex. B* [Doc. 4-1].)  By this provision, the statute of limitations for FEHA claims are three years in accordance with California Government Code § 12960(e).  See Cal. Gov. Code § 12960(e).  Plaintiff argues that the administrative deadline is an improper statute of limitations as she would ordinarily receive around an additional two years to file her claims in court as a practical matter of the administrative agency review process.  (*Pl.'s Opp'n* 13:24–14:4 [Doc. 5].)

Plaintiff relies on Baxter v. Genworth N. Am. Corp., 16 Cal. App. 5th 713, 730 (Cal. Ct. App. 2017).  In Baxter, an Agreement's statute of limitations was similarly limited to the administrative agency's filing deadline.  Id.  The Court found that "shortening the limitations period to pursue relief for FEHA statutory claims under [the agreement] to one year—the time required to file an administrative FEHA claim—is unreasonable."  Id. at 731.

Defendant notes that Plaintiff "requested an immediate Right-To-Sue Notice after filing her DFEH complaint" and was "not forced to forfeit her right to a DFEH investigation as a result of the Agreement."  (*Def.'s Reply* 6:26–7:3 [Doc. 6].)  How Plaintiff chooses to execute her claim does not affect the unconscionability analysis.  As in Baxter, "[t]he practical effect of the [Agreement] guidelines is to shorten the period that would otherwise apply to file an action in court."  See Baxter, 16 Cal. App. 5th at 731.  The fact that the administrative filing deadline for FEHA claims has been extended to three years may decrease the weight of this element on the "sliding scale" analysis, but this Agreement's statute of limitations provision remains substantively unconscionable under California law.

c.   **Administrative Processes and Remedies**

According to the "Deadlines and Timelines" portion of the Agreement's governing Solution Channel Guidelines, a claimant must decide and indicate whether she wishes to proceed with an arbitration hearing no later than eighty-five days after submitting a claim.  (*See Def.'s Ex. B* [Doc. 4-1].)  During this period, Defendant "will communicate .

. . whether the claim is arbitrable" and issue its determination of the claim based on its own internal review.  (*Id.*)  Plaintiff argues this timeline limits "employees' rights to pursue administrative remedies and/or have the right to have an administrative investigation under the FEHA . . . ."  (*Pl.'s Opp'n* 14:16–19 [Doc. 5].)  The Agreement expressly "does not bar a claimant from filing or pursuing a charge or complaint with a government agency." (*See Def.'s Ex. B* [Doc. 4-1].)  However, it is foreseeable that the eighty-five-day deadline could require an employee to choose whether to arbitrate before receiving results from an administrative investigation.  Agreements that create such a scenario are at least moderately unconscionable in California.  See Baxter, 16 Cal. App. 5th at 735 ("Because the administrative claim process may be beneficial to the employee in pursuing claims against an employer, provisions in [the agreement] that have the effect of dispensing with that process before a statutory FEHA claim must be arbitrated establish at least a moderate degree of substantive unconscionability.").

### d.    Fee-Shifting Provision

Section F of the Agreement requires that each party bear their own "costs, fees and expenses associated with the arbitration, including without limitation each party's attorney's fees . . . ."  (*Def.'s Ex. B* [Doc. 4-1].)  According to Plaintiff, this provision "unlawfully strips the statutory right to recover attorneys' fees and costs . . . ."  (*Pl.'s Opp'n* 15:12–14 [Doc. 5].)  Defendant points to the governing guidelines, which allow for the arbitrator to award "any remedy that the party would have been allowed to recover had the dispute been brought in court." (*Def.'s Reply* 7:9–12 [Doc. 6]) (quoting *Def.'s Ex. B* [Doc. 4-1].)  Defendant also notes that the AAA rules similarly allow the arbitrator to award "attorney's fees and costs, in accordance with applicable law."  (*Def.'s Reply* 7:12–15 [Doc. 6].)

California courts find provisions of an Agreement unconscionable that "purport[] to deprive an employee of his or her statutory right to recover attorney fees if the employee prevails on . . . a discrimination claim under the California Fair Employment and Housing Act." Carbajal v. CWPSC, Inc., 245 Cal. App. 4th 227, 251 (2016).  In

Carbajal, an arbitration agreement required parties to bear their own attorney fees while also granting arbitrators authority to award relief that would otherwise be available in a court proceeding under state or federal law. Id. at 250–51. The Court declined to read the latter provision in conjunction with the former, finding this "interpretation to be contrary to the parties' intent as expressed in the arbitration provision's clear and unambiguous language." Id. at 251. In other words, Carbajal expressly rejected Defendant's argument that the arbitrator's ability to award statutory fees toppled the prohibited provision denying this right. See id. "Nothing in the provision's language suggests the parties intended to limit or qualify this provision by also granting the arbitrators broad authority to award all types of relief authorized by law. '[W]hen there are conflicting clauses the more specific clause controls the more general.'" Id. (citing Rebolledo v. Tilly's, Inc., 228 Cal. App. 4th 900, 920 (Cal. Ct. App. 2014).

This Agreement requires that each party bear their own attorney fees and denies Plaintiff her statutory right to recover her attorney fees if she prevails. In California, such a provision is substantively unconscionable. See id.

e.   **PAGA Claims**

Plaintiff contends that the Agreement impermissibly mandates arbitration of representative claims under the Private Attorneys General Act of 2004 ("PAGA"). (*Pl.'s Opp'n* 15:17–21 [Doc. 5].) Defendant does not deny that the Agreement requires arbitration of PAGA claims, but insists that PAGA claims are arbitrable and the issue need not be addressed "because [Plaintiff] does not assert a PAGA claim." (*Def.'s Reply* 7:16–22 [Doc. 6].)

In California, "an employment agreement [that] compels the waiver of representative claims under the PAGA . . . is contrary to public policy and unenforceable as a matter of state law." Iksanian v. CLS Transp. L.A., LLC, 327 P.3d 129, 149 (Cal. 2014). The Ninth Circuit determined that this state rule is not preempted by the FAA, and therefore remains the standard for California agreements. Sakkab v. Luxottica Retail N. Am., Inc., 808 F.3d 425, 427 (9th Cir. 2015). However, it is "incorrect" that "because

the waiver of a representative PAGA claim is unenforceable, it is also substantively unconscionable." Poublon, 846 F.3d at 1264.  In fact, the Ninth Circuit has instructed that "the unenforceability of the waiver of a PAGA representative action does not make this provision substantively unconscionable," noting that such a determination would contradict Supreme Court precedent.  Id. (citing Concepcion, 563 U.S. at 344.).

Therefore, this factor carries no weight on the unconscionability analysis and enforceability need not be addressed as there are no PAGA claims in controversy.

### f.    Discovery

Plaintiff claims the Agreement's discovery provision is insufficient and unconscionable.  (Pl.'s Opp'n 16:4–6, 18:7–9 [Doc. 5].)  Specificallym Plaintiff objects to the Agreement's limitation of discovery to ninety days, four depositions, twenty interrogatories, and fifteen document production requests.  (Id. at 16:9–10, 23–25.)  Further, Plaintiff argues that the Agreement does not allow her to issue subpoenas, conduct expert discovery, or allow the arbitrator to grant additional discovery outside of what the Agreement authorizes.  (Id. at 16:25–17:7.)  Defendant counters that the Agreement's discovery provision is reasonable and aligned with arbitration's general purpose of a streamlined procedure.  (Def.'s Reply 8:4–13 [Doc. 6]) (citing Poublon, 846 F.3d at 1270).  Defendant also notes that the Agreement allows the arbitrator to order additional discovery.  (Def.'s Reply 8:13–19 [Doc. 6].)

Limitations to discovery are permissible in arbitration agreements, but courts must balance "desirable simplicity" with the "need for discovery 'sufficient to adequately arbitrate [] statutory claim[s], including access to essential documents and witnesses, as determined by the arbitrator(s) and subject to limited judicial review."  Poublon, 846 F.3d at 1270 (quoting Armendariz, 6 P.3d at 761).  California courts review the "amount of discovery permitted, the standard for obtaining additional discovery, and the evidence presented by plaintiffs that the discovery limitations will prevent them from adequately arbitrating their statutory claims."  Id. (citations omitted).

This Agreement's discovery provision, found in the Solution Channel Guidelines, provides:

> The parties will have 90 days to exchange information and take depositions. Information is generally exchanged through written questions or requests for documents, called interrogatories, requests for production, or third-party subpoenas. Each party will be permitted to take up to four (4) depositions and allowed up to 20 total interrogatories (including subparts) and up to 15 total requests for documents to the other party, whether the interrogatories and requests for documents are sent at one time or in increments. Each party will bear the cost of taking depositions, including court reporter and witness fees.

> Any disagreements regarding the exchange of information or depositions will be resolved by the arbitrator to allow a full and equal opportunity to all parties to present evidence that the arbitrator deems material and relevant to the resolution of the dispute.

> The arbitrator has the discretion to draw an adverse inference against a party who fails to timely cooperate in the exchange of information.

(*Def.'s Ex. B* [Doc. 4–1].)

This agreement does not allow for any additional discovery, let alone create a standard for requesting or approving it. (*See id.*)  The arbitrator can resolve disputes over "the exchange of information or depositions" through the normal discovery process, but the Agreement does not grant the arbitrator the ability to alter or expand that process. (*See id.*)  In Fitz v. NCR Corp., a discovery provision was considered unconscionable because it required an employee to show that a fair hearing was impossible without additional discovery in order for the arbitrator to extend discovery.  118 Cal. App. 702, 719 (Cal. Ct. App. 2004).  If an impossibility standard is too restrictive, so too must be the lack of any standard or option to extend discovery.  Therefore, this discovery provision is substantively unconscionable.

//

//

g.   <u>Plaintiff's Right to Amend Her Claim Before Discovery</u>

Plaintiff argues the Agreement is substantively unconscionable because it prohibits her from amending her claim prior to any opportunity to engage in discovery.  (*Pl.'s Opp'n* 18:14–17 [Doc. 5].)  However, Plaintiff correctly notes that no California court has found this procedure unconscionable.  (*Id.* at 18:25–26.)  Plaintiff notes that "California law permits the use of discovery to get information necessary to plead a cause of action" in court proceedings, (*see id.* at 18:26–19:1) (quoting <u>Williams v. Superior Ct. of L.A. Cnty.</u>, 398 P.3d 69, 83 (Cal. 2017)), but Plaintiff cannot argue that California requires as much in arbitration proceedings.  Plaintiff has provided no evidence of such a standard, and it will not be applied here.

h.   <u>Jury Trial and Litigation Waiver</u>

 Plaintiff challenges the conscionability of Section L of the Agreement, which reads, "in the event a dispute between you and Charter is not arbitrable under this Agreement for any reason and is pursued in court, you and Charter agree to waive any right to a jury trial that might otherwise exist."  (*Pl.'s Opp'n* 19:6–14 [Doc. 5]) (quoting *Def.'s Ex. B* [Doc. 4-1].)  Defendant argues that this jury trial waiver does not make the entire Agreement unconscionable, does not apply here because these claims are subject to arbitration, and is severable if found to be unconscionable.  (*Def.'s Reply* 9:2–6 [Doc. 6].)

California courts considers predispute jury trial waivers invalid unless expressly authorized by statute.  <u>Grafton Partners v. Superior Ct. of Alameda Cnty.</u>, 116 P.3d 479, 492 (Cal. 2005).  Plaintiff's reliance on <u>Dougherty v. Roseville Heritage Partners</u> is sound, and arbitration agreements are substantively unconscionable if they "require[] plaintiffs to waive in advance their right to a jury trial for any dispute for which arbitration is not allowed by law."  47 Cal. App. 5th 93, 107 (Cal. Ct. App. 2020).  Plaintiff need not file such a claim for this to be true.  <u>See id.</u>  Defendant does not deny this this provision is unconscionable.  (*See Def.'s Reply* 9:2–6 [Doc. 6].)  It clearly is under California law.  <u>See</u> <u>Dougherty</u>, 47 Cal. App. 5th at 107.

//

### i.    Unfair "Free Peek" Advantage

Plaintiff claims the Agreement gives Defendant an unfair "free peek" at her claim because the rules allow Defendant sixty days after the claim is submitted to "complete its internal review of an arbitrable claim and issue its determination . . . ." (*Pl.'s Opp'n* 19:16–24 [Doc. 5]) (quoting *Def.'s Ex. B* [Doc. 4-1].)  Plaintiff relies on Pokorny, which recognized that California courts have held an agreement unconscionable where it contained the element of a "free peek."  601 F.3d at 998 (citing Nyulassy v. Lockheed Martin Corp., 120 Cal. App. 4th 1267 (Cal. Ct. App. 2004)).  However, the Nyulassy agreement required the employee to "submit to discussions with his supervisors in advance of, and as a condition precedent to, having his dispute resolved through binding arbitration." Nyulassy, 120 Cal. App. 4th at 1282.  This is not a requirement in the Agreement here.  To submit a claim under this Agreement, an employee "must (1) describe the nature and basis of the claim or dispute, (2) set forth the specific relief sought, and (3) include a sworn verification that the dispute is covered by this Agreement and that the information submitted in the notice is accurate." (*Def.'s Ex. B* [Doc. 4-1].) Requiring an employee to provide a description of the "nature and basis" of a claim, at apparently whatever level of detail the employee chooses, is a far cry from subjecting the employee to potential fact-finding discussions with supervisors.  Plaintiff has failed to show that requiring an employee to describe the "nature and basis" of a grievance when submitting a claim is unreasonable, much less unconscionable.

### j.    <u>Awarding Attorney Fees to the Compelling Party</u>

Section K of the Agreement provides:

> If any judicial action or proceeding is commenced in order to compel arbitration, and if arbitration is in fact compelled or the party resisting arbitration submits to arbitration following the commencement of the action or proceeding, the party that resisted arbitration will be required to pay to the other party all costs, fees and expenses that they incur in compelling arbitration, including, without limitation, reasonable attorneys' fees.

(*Def.'s Ex. B* [Doc. 4-1].)

Plaintiff argues that this provision is unconscionable for the same reasons that the Agreement lacks mutuality: it is more likely to be used against employees than the employer.  (*Pl.'s Opp'n* 20:2–7 [Doc. 4].)  Defendant answers that the provision "is mutual and is therefore not unconscionable." (*Def.'s Reply* 9:18–19 [Doc. 6].)  As noted, this Agreement covers the claims most likely brought by employees, but excludes the claims most likely brought by the employer.  Because the employer is far more likely to attempt to enforce this Agreement against an employee, this provision will almost always yield one-sided results, a hallmark of substantive unconscionability.  See Mohammed, 848 F.3d at 1210.

## F.   The Offending Provisions Are Not Severable

Defendant argues that this Court "should simply sever or limit the offending provision and enforce the remainder of the agreement." (*Def.'s Mot. to Compel* 29:11–12 [Doc. 4].)  According to Plaintiff, none of the offending provisions are severable because they permeate throughout the Agreement and reflect Defendant's intention "to force employees into an unfair forum . . . ." (*Pl.'s Opp'n* 20:13–26 [Doc. 5].)

In California, "[c]ourts are to look to the various purposes of the contract.  If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced.  If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." Armendariz, 6 P.3d at 696.

In Armendariz, the California Supreme Court found two factors that weighed against severing the unlawful provisions. Id. at 696–97.  First, the unlawful portions of the agreement were not limited to a single provision. Id. at 697.  "Such multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." Id.  Second, the agreement's lack of mutuality so permeated the agreement that the court

1  could not cure the "unconscionable taint" through the severance of any single provision.

2  Id.  "Rather, the court would have to, in effect, reform the contract, not through severance

3  or restriction, but by augmenting it with additional terms," which is not permitted.  Id.

4      Both of these factors are present in this Agreement.  As discussed above, multiple

5  provisions of this Agreement are substantively unconscionable.  Taken together, the

6  provisions represent an attempt to enforce a one-sided alternative to litigation that favors

7  the employer.  There is no single provision's absence that would change this result.

8  Removing the unconscionability of this Agreement would require either the severance of

9  several provisions or the addition of several terms to mitigate the offending provisions,

10  neither of which are permitted.  Id. ("Nor do courts have any such power under their

11  inherent, limited authority to reform contracts.") (citing Kolani v. Gluska, 64 Cal. App.

12  4th 402, 407–08 (Cal. Ct. App. 1998).  Further, both options require this Court to

13  retroactively impose a fundamentally altered singular object of the contract upon each

14  party to which neither agreed at formation.  Finally, "[w]here a contract has but a single

15  object, and such object is unlawful, whether in whole or in part . . . the entire contract is

16  void."  Id. at 695 (quoting Cal. Civ. Code § 1598).  In this case, the unconscionability is

17  not "collateral to the main purpose of the contract."  Id. at 696.

18      The offending provisions of this Agreement are not severable, and the Agreement

19  is unenforceable.

20  //

21  //

22

23

24

25

26

27

28

25

1  **IV.   CONCLUSION AND ORDER**

2       For the foregoing reasons, Defendant's Motion to Compel Arbitration is **DENIED**.

3  [Doc. 4.]

4

5       **IT IS SO ORDERED.**

6  Dated:  November 23, 2020

7

8                                          Hon. Thomas J. Whelan
9                                          United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20–CV–1374–W–MSB